IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2004 Session

## STATE OF TENNESSEE v. TERRY WAYNE BUCKNER

**Direct Appeal from the Circuit Court for Coffee County**
**No. 30644 & 31664     L. Craig Johnson, Judge**

_____

**No. M2003-01010-CCA-R3-CD - Filed April 7, 2005**

_____

Following a jury trial, Defendant, Terry Wayne Buckner, was convicted of two counts of sexual battery. Defendant was sentenced to serve one year in confinement for each offense, with the sentences to run concurrently with each other. On appeal, Defendant challenges the trial court's failure to order alternative sentencing and the trial court's consideration of enhancement factors which were not submitted to a jury. After a thorough review, we modify Defendant's sentence for each conviction to a sentence of one year of split confinement with three months to be served in confinement and the balance to be served on probation, with the sentences to run concurrently with each other.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court Modified**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Ralph O. Frazier, Jr., Nashville, Tennessee, (on appeal); and Tony L. Maples, Murfreesboro, Tennessee, (at trial), for the appellant, Terry Wayne Buckner.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Charles Michael Layne, District Attorney General; and Jason Michael Ponder, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Factual Background**

The victims of the Class E felony offenses were Defendant's then fourteen-year-old stepdaughter, J.B., and her fourteen-year-old best friend, B.T. Because the victims are minors, their initials rather than their full names will be used throughout this opinion.

One summer afternoon, J.B. and B.T. were at J.B.'s grandparents' home, which was next door to where J.B.'s mother and her husband, Defendant, lived. B.T. had argued with her boyfriend the night before and wanted to meet him to talk. Because the girls knew J.B.'s mother and grandparents would not allow them to meet B.T.'s boyfriend, the two waited until J.B.'s mother had left for work, then lied to J.B.'s grandparents, saying they were going to visit a neighbor. J.B.'s grandparents discovered the girls were not at the neighbor's, and drove down the road to pick them up. They saw Defendant on the way back home, and the grandparents told him what had happened. After a lecture by Defendant and J.B.'s grandparents, Defendant took the girls to the neighbor's home so they could apologize to her. In the car, instead of continuing to lecture the girls, Defendant told them that they "should have come to [him] first" and that if they had, he would have allowed them to meet B.T.'s boyfriend without J.B.'s mother knowing. Defendant asked J.B. if he could trust B.T. When she said he could, he offered to allow the girls to do a lot of things they would not normally be allowed to do, such as go skating or meet boyfriends, and also to buy things for them, without telling anyone.

J.B. testified that after Defendant and her mother had been married for about two years, (when J.B. was twelve years old), Defendant had similarly promised to cover for her. He would allow J.B. to go to parties, meet a boyfriend, or purchase alcohol for her, and then lie to her mother on her behalf. In exchange, J.B. had to prove to him that he could trust her not to tell her mom or "get him into trouble." In order to prove he could trust her, Defendant would force J.B. to expose her breasts, model her bras and panties for him, and let him touch her vaginal area and breasts. Defendant would call this the "trust palette." J.B. testified that this happened on a daily basis for two years, but she did not tell anyone. When Defendant asked J.B. if he could trust her friend, B.T., J.B. believed he was referring to this "trust palette" and whether or not "he could trust her like he trusted me into letting him do things."

When Defendant, J.B., and B.T. returned home from the neighbor's house, Defendant sent J.B. outside so he could talk to B.T. alone. B.T. testified that when she was left alone with Defendant, he promised to let her and J.B. go skating, meet her boyfriend, give her money, or let her do what she wanted to do without telling anyone. Defendant then told B.T., "[s]o I can trust you, . . . there is something you have got to do for me." He turned off the lights, knelt in front of her, lifted up her shirt, and grabbed her breasts with both hands. She tried to get up, but Defendant grabbed her arm to prevent her from doing so, apologized, and said he wanted to talk. When B.T. sat back down, Defendant tried to unbutton her pants, but she got up from the chair.

Defendant went to get J.B. from outside, and B.T. went next door, where she tried to call her boyfriend. When Defendant was alone with J.B., he told her to sit next to him and he put his hand on the inside of her thigh. When she told him she was "on her period," he reached up and touched her breasts. At that point, Defendant's nephew pulled up to the house, and J.B. jumped up and ran outside to meet him.

At trial, Defendant denied ever inappropriately touching either B.T. or J.B. He denied ever making any sexual comments or talking inappropriately to either girl. He stated that he loved his step-daughter, J.B., very much and thought they had a good relationship.

Following a sentencing hearing, Defendant was sentenced to serve two concurrent one-year sentences as a Range I, standard offender. Defendant was ordered to serve this presumptive one-year minimum sentence in confinement, at thirty percent. On appeal, Defendant argues that the trial court erred by: (1) failing to sentence Defendant to alternative sentencing such as probation, (2) failing to apply judicial diversion when sentencing Defendant, and (3) applying the enhancement factors of "vulnerability" and "abuse of a position of private trust" without submission of proof of these factors to a jury.

## II. Analysis

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (2005). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make on the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have

often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

A court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 as they are relevant to the section 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); *State v. Batey*, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986).

Defendant first argues that the trial court erred by denying alternative sentencing and ordering Defendant to serve his effective one-year sentence in confinement. A defendant is eligible for probation if the sentence received by the defendant is eight years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). As noted earlier, an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). A trial court must presume that a defendant sentenced to eight years or less and for whom incarceration is not a priority is subject to alternative sentencing. *State v. Byrd*, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993). It is further presumed that a sentence other than incarceration would result in successful rehabilitation unless rebutted by sufficient evidence in the record. *Id.* at 380. However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. Tenn. Code Ann. § 40-35-303(b); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; *State v. Hartley*, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). A defendant seeking full probation bears the burden on appeal of showing the sentence imposed is improper, and that full probation will be in the best interest of the defendant and the public. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on

a defendant's potential for rehabilitation. *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).

Probation may be denied based solely upon the circumstances surrounding the offense. *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995); *Hartley*, 818 S.W.2d at 374. However, the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and the nature of the offense must outweigh all factors favoring probation. *Hartley*, 818 S.W.2d at 374-75.

As noted *supra*, under the 1989 Sentencing Act, sentences which involve confinement are to be based on the following considerations contained in Tennessee Code Annotated section 40-35-103(1):

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*State v. Grigsby*, 957 S.W.2d 541, 545 (Tenn. Crim. App. 1997); *State v. Millsaps*, 920 S.W.2d 267, 270 (Tenn. Crim. App. 1995). There is nothing in the record to indicate that sections 40-35-103(1)(A) or (C) apply to Defendant. As to section 40-35-103(1)(B), to determine whether there is a need for deterrence, the following factors should be considered: (1) whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or state as a whole; (2) whether the crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from criminal behavior; (3) whether the alleged offense received substantial publicity beyond that normally expected in a typical case; (4) whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective; and (5) whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions. *State v. Hooper*, 29 S.W.3d 1, 10-12 (Tenn. 2000). These factors serve as a guide, and a court need not find all factors applicable in order to conclude there is a need for deterrence. *Id*. at 12. Additional factors may also be considered, provided the court states them with specificity and they are supported by the proof. *Id*.

When imposing Defendant's sentence, the trial court initially ordered Defendant to serve split confinement under Tennessee Code Annotated section 40-35-306. Defendant was ordered to serve five months in the Coffee County Jail, with the balance of the one-year sentence to be served on probation. As a condition of Defendant's probation, he was ordered to receive outpatient treatment

to address the sexual battery convictions and his risk for future similar conduct. In ordering this sentence, the court stated:

> The Court has carefully considered all probation factors including those located in [Tennessee Code Annotated section] 40-35-303. The Court specifically notes that the sentence of incarceration shall be reserved for those convicted felons who commit the most severe offenses and who possess criminal histories demonstrating a clear disregard for the laws and morals of society and those that possess criminal histories demonstrating failure of past efforts at rehabilitation. The defendant is presumed by law to be a favorable candidate for alternative sentencing. However, under the circumstances of this case, in particular a sexual battery against teenage girls placed in the trust and care of the defendant, the Court finds under the psychosexual report, the defendant's potential for similar behavior is a moderate to high risk. The court finds that confinement is necessary to avoid depreciating the seriousness of the offense and is particularly suited to provide an effective deterrent to others likely to commit similar offenses. In addition, the nature and circumstances of the criminal conduct involved were especially shocking and reprehensible and offensive considering the age of the victims and the defendant's violations of his duties to care for the children under his care.

The prosecutor had concerns about this sentence, noting to the trial court that Defendant could not be ordered to serve more than thirty percent, or three months and eighteen days, of a one-year sentence if split confinement was ordered. *See* Tenn. Code Ann. § 40-35-501(a)(3), (c); *see also State v. Steven Michael Ware,* No. E2000-01952-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 592, at *12 (Tenn. Crim. App., at Knoxville, Aug. 7, 2001) ("a trial court may impose a period of up to one year in the local jail as part of a sentence involving split confinement, but only when the period of confinement would be completed before the release eligibility date") (no Tenn. R. App. P. 11 application filed). The trial court agreed and immediately modified the sentence and ordered Defendant to serve one year in confinement "subject to the law of the State of Tennessee as far as eligibility for probation and parole."

Defendant has not met his burden on appeal of demonstrating that the trial court's denial of full probation was improper. The record supports the trial court's decision to order Defendant to serve a portion of his sentence in confinement. One of the victims, Defendant's step-daughter, testified that Defendant had committed similar acts against her for two years on a daily basis. This fact alone indicates that incarceration is an appropriate means of deterring Defendant. *See State v. Hooper*, 29 S.W.3d 1, 10-12 (Tenn. 2000) ("defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions"). However, we note that the trial court initially ordered an alternative sentence of split confinement. We agree that a sentence of split confinement, rather than full incarceration, is appropriate. The trial court, after realizing that the five-month period of confinement originally ordered would violate Tennessee Code Annotated section 40-35-501(a)(3) because it would exceed Defendant's release eligibility, modified the sentence to a full year in

confinement (allowing Defendant to be eligible for release after serving thirty percent of this one-year sentence). We modify the sentence to one year of split confinement, with three months served in confinement, and the balance on probation. As a condition of Defendant's probation, Defendant should receive outpatient treatment to address the sexual battery convictions and his risk for future similar conduct, as originally ordered by the trial court.

Defendant argues that the trial court abused its discretion by denying judicial diversion pursuant to Tennessee Code Annotated section 40-35-313. Judicial diversion is a "legislative largess" where a defendant, upon being found guilty or pleading guilty, may complete a diversion program and receive expungement of records and dismissal of the charges. *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999). When a defendant contends that the trial court committed error in refusing to impose a sentence pursuant to Tennessee Code Annotated section 40-35-313, commonly referred to as "judicial diversion," this court must determine whether the trial court abused its discretion in failing to sentence pursuant to the statute. *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); *State v. Bonestel*, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993). Judicial diversion is similar to pretrial diversion; however, judicial diversion follows a determination of guilt, and the decision to grant judicial diversion rests with the trial court, not the prosecutor. *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). When a defendant challenges the trial court's denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Cutshaw*, 967 S.W.2d at 344; *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). This Court said in *Anderson*:

> We conclude that judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under Tennessee Code Annotated section 40-15-105. Therefore, upon review, if "any substantial evidence to support the refusal" exists in the record, we will give the trial court the benefit of its discretion. Only an abuse of that discretion will allow us to overturn the trial court.

857 S.W.2d at 572 (citation omitted). In the case *sub judice*, the trial court, having decided Defendant was not an appropriate candidate for full probation, also denied Defendant's application for judicial diversion. We will not disturb this decision on appeal. The trial court did not abuse its discretion by refusing to consider judicial diversion as an appropriate sentence. This issue is without merit.

Finally, Defendant argues that in light of *Blakely v. Washington,* the trial court erred when sentencing Defendant by applying two enhancement factors that were not submitted to a jury: (1) a victim of the offense was particularly vulnerable because of age; and (2) the defendant abused a position of private trust. 542 U.S. __, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004); *see* Tenn. Code Ann. § 40-35-114(5), (16). As a Range I offender convicted of a Class E felony, Defendant is subject to a sentence of between one and two years. Tenn. Code Ann. § 40-35-112(a)(5). In calculating the sentence for a Class E felony conviction, the presumptive sentence is the minimum

in the range if there are no enhancement or mitigating factors. *Id.* § 40-35-210(c). If there are enhancing but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. *Id.* § 40-35-210(d). If both enhancing and mitigating factors are present, the trial court must start at the presumptive minimum, enhance the sentence within the range as appropriate for the enhancing factors, and then reduce the sentence as appropriate for the mitigating factors. *Id.* § 40-35-210(e). The Sentencing Order set forth the trial court's reasoning in assigning the presumptive one-year minimum sentence for each offense:

> [T]he court does feel that the enhancing factor of the victim being particularly vulnerable because of age applies. The Court notes that both victims in this case were young teens that were extremely vulnerable because they were under supervision of the defendant. In addition, the Court finds as to the victim, [J.B.], that the defendant abused a position of public or private trust, because he committed the offense against his step-daughter. As to mitigating factors, the Court finds that the defendant has no previous criminal history. In addition, the Court finds that the defendant's criminal conduct neither caused nor threatened serious bodily harm. Applying these enhancing and mitigating factors and weighing them under Tennessee Law, the Court finds that the sentence should be one (1) year on each count, each running concurrent with the other, there being no circumstances in this case that would require consecutive sentencing.

The State argues that Defendant has waived any sentencing issues that are impacted by *Blakely*. However, because *Blakely* calls into question certain aspects of our current sentencing scheme, we will address the merits of Defendant's challenge to the length of his sentence. In *Blakely v. Washington*, 542 U.S. __, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004), the United States Supreme Court, applying the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. *Blakely*, 124 S. Ct. at 2537. Prior to *Blakely*, the *Apprendi* court had observed "that nothing in [the] history [of the common law] suggests that it is impermissible for judges to exercise discretion-- taking into consideration various factors relating both to offense and offender-- in imposing a judgment *within the range* prescribed by statute." *Apprendi*, 530 U.S. at 481, 120 S. Ct. at 2358 (emphasis in original). Thus, the Supreme Court of Tennessee concluded that under *Apprendi*, a trial court still retained its discretion to consider applicable enhancement and mitigating factors so long as the defendant's sentence is not enhanced beyond the statutory maximum. *Graham v. State*, 90 S.W.3d 687, 692 (Tenn. 2002). The *Blakely* court, however, clarified that the relevant "statutory maximum" which forms the basis of the *Apprendi* rule "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 124 S. Ct. at 2537 (emphasis in original). In other words, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* (emphasis in original).

In the case *sub judice*, the trial court sentenced Defendant to one year for each offense, the presumptive sentence for a Range I, standard offender, convicted of a Class E felony. The trial court could have sentenced Defendant to one year absent any enhancing or mitigating factors. Even if the trial court had found only mitigating and no enhancement factors, the sentence could have been set at one year, the presumptive sentence. As such, the trial court did not apply enhancement factors to exceed the "statutory maximum" sentence, and *Blakely* is not applicable.

Defendant claims, however, that *Blakely* requires that he be sentenced as an especially mitigated offender, rather than a standard, Range I offender. If sentenced as an especially mitigated offender, Defendant would have either: (1) his sentence reduced by ten percent, or (2) his release eligibility date reduced to twenty percent of the sentence, or (3) both reductions. Tenn. Code Ann. § 40-35-109(b). According to Tennessee Code Annotated section 40-35-109, "the court *may* find the defendant is an especially mitigated offender, if: (1) [t]he defendant has no prior felony convictions; and (2) [t]he court finds mitigating, but no enhancement factors." § 40-35-109(a) (emphasis added). Therefore, the finding that Defendant is an especially mitigated offender is permissive and *not required* when there is an absence of enhancement factors and mitigating factors are found to be applicable. Defendant asserts that because *Blakely* prevents a court from applying the enhancement factors listed in section 40-35-114 to impose a sentence *longer* than the presumptive sentence for a Class E felony without first submitting those enhancement factors to a jury, *Blakely* also prevents a court from considering those enhancement factors when deciding between sentencing a defendant as a standard offender rather than an especially mitigated offender. Under this reasoning, Defendant argues that because he has no prior felony convictions, the court did find applicable mitigating factors, and *Blakely* prevents a court from applying enhancement factors, he would qualify for sentencing as an especially mitigated offender under section 40-35-109. In essence, Defendant argues that when no prior criminal record exists, a trial court cannot find a defendant ineligible for especially mitigated offender status except by violating that defendant's right to a jury trial by applying at least one other enhancement factor. We disagree.

Whether a defendant should be sentenced as an especially mitigated offender under Tennessee Code Annotated section 40-35-109 is a question which rests within the sound discretion of the trial court. *State v. Blackstock*, 19 S.W.3d 200, 211 (Tenn. 2000); *State v. Braden*, 867 S.W.2d 750, 762 (Tenn. Crim. App. 1993); *State v. Buttrey*, 756 S.W.2d 718, 722 (Tenn. Crim. App. 1988). The statute states that a court "*may* find the defendant is an especially mitigated offender." § 40-35-109(a) (emphasis added). The word "may", when used in a statute or rule, "usually indicates that the act to which it refers is *discretionary*, rather than *mandatory*, and will be so construed unless the context indicates a different meaning." *Halfacre v. State*, 79 S.W. 132, 133 (Tenn. 1904) (emphasis added); *Braden*, 867 S.W.2d at 762. If the Tennessee General Assembly had intended for sentencing within this classification to be mandatory, it would have used the word "shall" as it did in other provisions of the Tennessee Criminal Sentencing Reform Act of 1989. *Braden*, 867 S.W.2d at 762-63; *see also Buttrey*, 756 S.W.2d at 722. Even where a defendant is eligible for especially mitigated offender status, he or she will fall within the standard offender status by default. *State v. Linda H. Overholt*, No. E2003-01881-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 48, at *42-43 (Tenn. Crim. App., at Knoxville, Jan. 21, 2005).

In *State v. Linda H. Overholt*, a panel of this Court held that *Blakely* "holds no sway over [the] judge-made determination" of whether a defendant should be sentenced as an especially mitigated offender. *Id.* at *43. In *Overholt*, although the trial court did not apply any enhancement factors, the proof before the court at sentencing showed that defendant had admitted to prior drug use and to driving a motor vehicle on an expired driver's license. *Id.* at *38. When considering mitigating factors, the trial court found that the defendant had acquired a good employment record and a reputation for industry and that she took care of needy family members. *Id.* The court, however, did not attribute enough weight to the mitigating circumstances to further reduce the defendant's sentences below the minimum Range I sentences imposed. *Id.* The defendant argued that the trial court violated her right to a jury trial when it declined to sentence her as an especially mitigated offender. *Id.* at 35. In affirming the defendant's sentence, the Court noted that "the *Blakely* rule is not linked to *eligibility* for sentence *mitigation*; it is tied to a judge finding factual standards to justify *increasing* the sentence beyond the 'maximum' or presumptive sentence." *Id.* at *42. Because a judge's actions pursuant to section 50-35-109(a) are purely discretionary, allowing a judge to decline to award especially mitigated offender status to even an eligible defendant, this Court saw "no *Blakely* implications in this sentencing activity." *Id.* at *41.

Likewise, in this case, we find no error in the trial court's sentencing Defendant as a standard offender. *Blakely* does not apply to the determination of mitigated offender status. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is modified such that Defendant's sentence is as follows: Defendant is ordered to serve one year in split confinement for each count of sexual battery running concurrently with each other. Defendant is ordered to serve three months in the Coffee County Jail, with the balance of the sentence on probation. As a condition of probation, Defendant is to receive outpatient treatment to address the sexual battery convictions and his risk for future conduct.

_____
THOMAS T. WOODALL, JUDGE